# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRAYDEN HURD, A MINOR,** by his parents and natural guardians, **KATRINA ENGLE** and **BRYAN HURD,** and **KATRINA ENGLE** and **BRYAN HURD** in their own right,<br>Plaintiffs | : : : : : : : : : : : | No. 3:06cv1927<br><br>(Judge Munley) |
| v. | : : | |
| **THOMAS A YAEGER, M.D.;**<br>**BAMBI PETRINIC, M.D.;**<br>**ROBERT PACKER HOSPITAL;**<br>**GUTHRIE CLINIC SAYRE; GUTHRIE**<br>**HEALTH CARE SYSTEM,**<br>Defendants | : : : : : : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is the defendants' motion to strike plaintiffs' rebuttal expert reports in this medical malpractice action. Having been fully briefed, this matter is ripe for disposition.

## BACKGROUND

Plaintiff Katrina Engle, approximately twenty-eight weeks pregnant at the time, presented to a physician at defendant Guthrie Clinic Sayre ("Clinic") on March 13, 2006 complaining of abdominal discomfort, cramping, and feeling "like her fetus's head was pushing down." (Plaintiff's Amended

Complaint (Doc. 72) at ¶ 13) (hereinafter "Am. Complt."). Plaintiff Engle was diagnosed with a urinary tract infection and sent home. (Id.). Later that day, Plaintiff Engle telephoned the Clinic and spoke to a nurse regarding further cramping and vaginal bleeding, but she was told that these symptoms were consistent with a urinary tract infection. (Id. at ¶ 14).

That same evening, Plaintiff Engle visited defendant Robert Packer Hospital ("Hospital") complaining of the same symptoms during an evaluation by Defendant Dr. Bambi Petrinic, M.D. (Id. at ¶ 15-18). By telephone, Defendant Petrinic consulted the attending physician on call, Defendant Dr. Thomas A. Yaeger, M.D. (Id. at ¶ 20). Defendant Yaeger relied on Defendant Petrinic's report at the time and did not personally examine Plaintiff Engle. (Id. at ¶¶ 21-22). Plainitff Engle was subsequently discharged from the Hospital at 7:30 PM. (Id. at ¶ 23).

At approximately 12:30 AM on March 14, 2006, Plaintiff Engle presented to Arnot Ogden Medical Center in Elmira, New York, again with complaints of sharp abdominal pain and vaginal bleeding. (Id. at ¶ 24). Upon examination, Plaintiff Engle's cervix was found to be fully dilated. Shortly thereafter, Plaintiff Engle went into premature labor. (Id.). Minor-plaintiff Brayden Hurd was born early that morning with a host of physical and mental conditions

2

related to his premature birth, including several heart and lung ailments and various developmental deficits. (Id. at ¶¶ 12, 26).

This medical malpractice case was commenced on September 28, 2006, by way of Complaint. (Doc. 1). Plaintiffs assert that Defendants Yaeger and Petrinic failed to meet the standard of care in treating Plaintiff Engle and Minor-Plaintiff Hurd. According to the plaintiffs, the defendants specifically failed to recognize the risk factors and symptoms of Plaintiff Engle's pre-term labor and dispense tocolytics, or labor-delaying drugs, so that Minor-Plaintiff Hurd could develop further through the administration of steroid treatments. (Brief in Support of Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Rebuttal Expert Reports (Doc. 114) at 2, 12) (hereinafter "Brief in Opposition").

On March 24, 2008, Plaintiffs filed an Amended Complaint and added a new party, Defendant Petrinic. (Doc. 72). A rescheduling order for a new round of discovery set July 1, 2008 as an initial fact discovery deadline, as well as the date plaintiffs' expert reports were due. (Order, April 23, 2008 (Doc. 87) at ¶ 1). Although the plaintiff's initial expert reports were served by that date, the defendants sought and received an extension to complete their expert reports after the timeliness of the plaintiffs' initial examination

disclosures came into question. (See Defendant's Motion to Extend Case Management Deadlines (Doc. 90)). An amended case management order set forth the following deadlines that same year: defendants' expert reports by September 1, plaintiffs' rebuttal expert reports by October 1; and defendants' rebuttal reports by November 1. (Order, July 18, 2008 (Doc. 96) at ¶ 1).

All parties followed the amended case management order. The defendants served the reports of experts in the fields of neurodevelopment and maternal fetal medicine in a timely manner. (Brief in Opposition at 4). In turn, the plaintiffs served eleven expert rebuttal reports on October 1, 2008. (Motion to Strike Plaintiffs' Rebuttal Reports (Doc. 107) at ¶ 5) (hereinafter "Motion to Strike")). Defendants now challenge the reports of Plaintiff experts Dr. Harlan Giles, M.D., Dr. Michael Steinhardt, Psy.D, and Dr. Sanam Hafeez, Psy.D[1] arguing that they are not rebuttal reports at all, but "blatant and impermissible attempts by Plaintiffs to introduce new theories, correct and redo old theories...or simply brand new examinations." (Id. at ¶ 6). Although both sides have consulted multiple experts throughout discovery, the defendants now seek refuge in this court's scheduling order and the Federal

---

[1] The defendants have also filed a Motion to Preclude Plaintiffs' Expert Reports and Opinions. (Doc. 122). That Daubert motion also seeks to limit the expert testimony of Dr. Giles and Dr. Steinhardt among others. Filings related to the Daubert motion include marked exhibits which we must cite to in the instant motion.

4

Rules of Civil Procedure, alleging surreptitious litigation tactics by the plaintiffs.

**JURISDICTION**

Minor-Plaintiff Hurd, Plaintiff Engle, and Plaintiff Bryan Hurd are citizens of New York. (Am. Cmplt. at ¶ 1-3). Defendant Yeager is licensed to practice medicine and currently practices in Pennsylvania. (Id. at ¶ 4). At all times relevant, Defendant Petrinic was and is licensed to practice medicine in Pennsylvania and practiced in Pennsylvania where the subject incident took place. (Id. at ¶ 5). Defendants Robert Packer Hospital, Guthrie Clinic Sayre, and Guthrie Health Care System are corporations or legal entities organized and existing under the laws of Pennsylvania. (Id. at 6-8). The amount in controversy exceeds $75,000. (Id. at ¶ 10). This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**DISCUSSION**

Defendants contend that the reports of Giles, Steinhardt, and Hafeez are untimely and should be stricken from the record. However, plaintiffs' rebuttal expert reports were served in accordance with the court-imposed October 1, 2008 deadline, which the defendants acknowledge. (Motion to Strike at ¶ 5). A careful, substantive analysis of the expert reports in question

shows that they are proper, timely rebuttals under the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony, as a party must disclose to the other parties the identity of any witness it may use at trial to present evidence. FED. R. CIV. P. 26(a)(2)(A). If the court's scheduling order provides for rebuttal reports, as it does here, a party may only submit an expert rebuttal "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party" according to the deadlines created by the court. FED. R. CIV. P. 26(a)(2)(C).

Federal Rule of Civil Procedure 37(c)(1) provides that sanctions can be imposed if a party does not comply with Rule 26(a)(2) disclosure requirements. "If a party fails to provide information or identify a witness as required by Rule 26(a). . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(C)(1) ("Rule 37").

"The imposition of sanctions for abuse of discovery under [Rule 37] is a matter within the discretion of the trial court." Newman v. GHS Osteopathic,

Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d. Cir.1995), citing Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir. 1994). Moreover, " 'the exclusion of critical evidence is an 'extreme' sanction, not normally. . . imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.' " In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-92 (3d Cir.1994) (quoting Meyers v. Pennypack Woods Home Ownership Assn., 559 F.2d 894, 905 (3d Cir. 1977)).

As part of their attempt to strike these experts, defendants contend that the plaintiffs violated Rule 37 by "serv[ing], in the guise of 'rebuttal' reports, a host of new allegations propounded by new experts," Giles, Steinhardt, and Hafeez, after the passage of court deadlines. (Motion to Strike at ¶ 1). Although the submission of these reports in question is in accordance with the July 18, 2008 scheduling order, this court will proceed to analyze the contents of each report because their substance and character are the basis for the defendants' challenge.

**I. Dr. Giles report**

Dr. Giles's expert report is disputed by the defendants for being, at once, redundant and contradictory. First, the defendants call the expert opinion of Dr. Giles, an OB-GYN, a reaffirmation of the report of an earlier

7

plaintiff expert, Dr. Albert Thomas, also an OB-GYN. ("Motion to Strike" at ¶ 28). Second, defendants challenge Dr. Giles's conclusion that Plaintiff Engle did not have chorioamnionitis – a maternal infection that may result in premature birth – on the grounds that Giles's testimony conflicts with plaintiffs' other experts Dr. Rebecca Baergen and Dr. Sandra Reznick. (Id. at ¶¶ 29-31) According to their reports, Dr. Baergen and Dr. Reznick both believe that Plaintiff Engle had chorioamnionitis. (Id.).

The defendants cannot show willful deception or flagrant disregard of the case management order by the plaintiffs in challenging the report of Dr. Giles under Rule 26 and Rule 37. Dr. Giles's report lists his qualifications and provides particular opinions about maternal infection and the potential efficacy of labor-delaying drugs. (See Motion to Strike, "Ex. I "). In reading the initial report submitted by Dr. Thomas, some overlap of qualifications and testimony exists as the defendants allege. (See Defendants' Memorandum of Law in Support of Their Motion to Preclude Plaintiffs' Expert Reports and Opinions, "Ex. F").

Although we reserve the right to limit cumulative evidence at an appropriate time, we will not do so on the instant motion to strike Dr. Giles's report. Dr. Giles opines in reaction to the testimony of defendant OB-GYN

8

experts Dr. Arnold Cohen (See Motion to Strike, "Ex. C") and Dr. Robert Goldenberg (See Id. "Ex. B"), who notably overlap in qualifications and testimony as well. Cohen and Goldenberg both state in their opinions that Plaintiff Engle's infection was advanced, untreatable, and would have required early delivery, regardless of the actions of the defendants. Giles's report rebuts that opinion, as he states, in summary, that there was a "lack of clinically significant chorioamnionitis." (Id. "Ex. A" at unnumbered p. 6-7).

On the other charge that plaintiff's initial and rebuttal experts contradict each other, the reports of Dr. Baergen (See Id. "Ex. J") and Dr. Reznick (See Id. "Ex. K") both state that postpartum pathology slides of Plaintiff Engle are indicative of "early acute chorioamnionitis." (emphasis added). Giles, like Baergen and Reznick, does not rule out signs of minor, external infection, which he calls "treatable without consequence to the fetus." (Id. "Ex. A" at unnumbered p. 5). As such, there seems to be no direct conflict among plaintiffs' original and rebuttal experts in satisfaction of Rule 26 and Rule 37.

**II. Report of Dr. Steinhardt and Dr. Hafeez**

Defendants also challenge the reports of plaintiffs' neuro-developmental specialists, Dr. Steinhardt and Dr. Hafeez. The defendants label the expert testing conducted by Dr. Steinhardt and Dr. Hafeez as "wholly new

examination[s]" of the minor-plaintiff. (Id. at ¶¶ 17-19, 23-25). Defendants allege that these reports are not permissible rebuttals for several reasons. First, Dr. Steinhardt and Dr. Hafeez apparently did not reference the defendant expert reports both were rebutting. (Id. at ¶¶ 17, 23). Moreover, the baseline neuro-developmental testing conducted by Steinhardt and Hafeez, defendants allege, could have and should have been done prior to the July 1, 2008 deadline for initial expert reports. According to the defendants, the Steinhardt and Hafeez reports are simply "laying in wait" litigation tactics and delay efforts. (Id. at ¶¶ 19, 25).

The defendants fail to demonstrate that the reports Dr. Steinhardt and Dr. Hafeez are invalid rebuttals. Dr. Steinhardt conducted the Vineland Adapted Behavior Scales on Brayden Hurd in a telephone interview with Plainitff Engle. (See Id. "Ex. E"). Dr. Hafeez, a similar specialist, took a behavioral inventory and administered intelligence tests to minor-plaintiff within the same week. (See Id. "Ex. H"). Plaintiffs maintain that the evaluations and findings of Steinhardt and Hafeez were necessary and appropriate to assist the reports of Dr. Stephen Kugler and Dr. Thomas Rugino, the plaintiffs' pediatric neurological experts. (Brief in Opposition at 8, 10). The reports of Dr. Kugler and Dr. Rugino, in turn, served to rebut the

10

corresponding defense expert, Dr. Gregory Liptak. (Id.)  The test conducted by Steinhardt was also necessary, according to the plaintiffs, in order to rebut the explanation of the low score Brayden received on Liptak's examinations, which the defense expert attributed to hunger, exhaustion, and distraction. (Id. at 9).  Moreover, the plaintiffs point out that the minor-plaintiff's condition is not static, but a series of deficits and delays that must be reevaluated over time.  (Id. at 11).  Since the tests were necessary to evaluate the minor-plaintiff's changing condition and to craft the reports of Dr. Kugler and Dr. Rugino, the Steinhardt and Hafeez evaluations are proper expert rebuttals under Rule 26 and Rule 37 and will not be stricken.

**CONCLUSION**

Although the defendants allege willful deception and flagrant disregard of the court's scheduling orders by the plaintiffs in submitting the rebuttal reports of experts Dr. Giles, Dr. Steinhardt, and Dr. Hafeez, the substance of these timely reports does not justify the imposition of Rule 37 sanctions.  As such, the defendants motion to strike will be denied.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRAYDEN HURD, A MINOR,** by his parents and natural guardians, **KATRINA ENGLE and BRYAN HURD,** and **KATRINA ENGLE and BRYAN HURD** in their own right,<br>    Plaintiffs | : : : : : : : : : : | No. 3:06cv1927<br><br>(Judge Munley) |
| v. | : : | |
| **THOMAS A YAEGER, M.D.;**<br>**BAMBI PETRINIC, M.D.;**<br>**ROBERT PACKER HOSPITAL;**<br>**GUTHRIE CLINIC SAYRE; GUTHRIE**<br>**HEALTH CARE SYSTEM**<br>    Defendants | : : : : : : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 13th day of August 2009, Defendant's Motion to Strike Plaintiffs' Rebuttal Expert Reports (Doc. 107) is hereby **DENIED**.

                                              **BY THE COURT:**

                                              **s/ James M. Munley**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**