```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| **BRAYDEN HURD, A MINOR,** by his parents and natural guardians, **KATRINA ENGLE and BRYAN HURD, and KATRINA ENLGE and BRYAN HURD,** in their own right,<br>**Plaintiffs**<br><br>v.<br><br>**THOMAS A. YAEGER, M.D.; BAMBI PETRINIC, M.D.; ROBERT PACKER HOSPITAL; GUTHRIE CLINIC SAYRE; GUTHRIE HEALTH CARE SYSTEM,**<br>**Defendants** | No. 3:06cv1927<br><br>(Judge Munley) |

## **MEMORANDUM**

Before the court for disposition is the a joint motion for summary judgment filed by Defendants Robert Packer Hospital, Guthrie Clinic Sayre, Guthrie Health Care System and Thomas A. Yaeger, M.D., as well as a motion for partial summary judgment filed by Bambi Petrinic, M.D. The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff Katrina Engle presented to a physician at defendant Guthrie Clinic Sayre ("Clinic") on March 13, 2006. She was approximately twenty-eight weeks pregnant at the time. (Amended Complaint (Doc. 72) at ¶ 13) (hereinafter "Am. Complt."). She complained of abdominal discomfort, cramping, and feeling "like her fetus's head was pushing down." Plaintiff Engle was diagnosed with a urinary tract infection and sent home. (Id.). Later that day, Plaintiff Engle telephoned the Clinic and spoke to a nurse regarding further cramping and vaginal bleeding, but she was told that these symptoms were consistent with a urinary tract infection. (Id. at ¶ 14).

That same evening, Plaintiff Engle visited defendant Robert Packer

Hospital ("Hospital") complaining of similar symptoms during an evaluation by defendant Dr. Bambi Petrinic, M.D. (Id. at ¶ 15-18). By telephone, Defendant Petrinic consulted the attending physician on call, Defendant Dr. Thomas A. Yaeger, M.D. (Id. at ¶ 20). Defendant Yaeger relied on Defendant Petrinic's report at the time and did not personally examine Plaintiff Engle. (Id. at ¶¶ 21-22). Plaintiff Engle was subsequently discharged from the Hospital at 7:30 PM. (Id. at ¶ 23).

At approximately 12:30 AM on March 14, 2006, Plaintiff Engle presented to Arnot Ogden Medical Center in Elmira, New York, again with complaints of sharp abdominal pain and vaginal bleeding. (Id. at ¶ 24). Upon examination, Plaintiff Engle's cervix was found to be fully dilated. Shortly thereafter, Plaintiff Engle went into early labor. (Id.). Minor-Plaintiff Hurd was born early that morning with a host of physical and mental conditions related to his premature birth, including several heart and lung ailments and various developmental deficits. (Id. at ¶¶ 12, 26).

Plaintiffs allege medical malpractice against the defendants for failure to meet the standard of care in treating Plaintiff Engle and Minor-Plaintiff Hurd. According to the plaintiffs, the defendants specifically failed to recognize the risk factors and symptoms of Plaintiff Engle's pre-term labor and dispense tocolytics, or labor-delaying drugs,[1] so that Minor-Plaintiff Hurd could develop further in utero through the administration of steroid treatments. (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Preclude Plaintiffs' Expert Reports and Opinions (Doc. 142) at 6-

---

[1] A "tocolytic" is a "pharmacologic agent used to arrest uterine contractions; often used in an attempt to arrest premature labor contractions[.]" Stedman's Medical Dictionary, p. 1994 (28th ed. 2006).

10) (hereinafter "Memo. in Opposition").

This case was commenced on September 28, 2006 by way of Complaint. (Doc. 1). On March 24, 2008, Plaintiffs filed an Amended Complaint and added a new party, Defendant Petrinic. (Doc. 72). At the close of discovery, the defendants filed a motion for summary judgment, bringing the case to its present posture.

**Jurisdiction**

Minor-Plaintiff Hurd, Plaintiff Engle, and Plaintiff Bryan Hurd are citizens of New York. (Am. Cmplt. at ¶ 1-3). Defendants Yaeger and Petrinic are citizens of Pennsylvania. (Id. at ¶ ¶ 4-5). Defendants Robert Packer Hospital, Guthrie Clinic Sayre, and Guthrie Health Care System are corporations or legal entities organized and existing under the laws of Pennsylvania. (Id. at 6-8). The amount in controversy exceeds $75,000. (Id. at ¶ 10). This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The substantive law of Pennsylvania shall apply to the case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

3

no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

The defendants' joint motion raises four issues that we will address separately.

**1) Theory that the pregnancy could have been extended more than forty-eight (48) hours.**

The defendants first argue that they are entitled to summary judgment as to any claims arising from the theory that Katrina Engle's pregnancy could have been extended more than forty-eight hours because

no admissible evidence supports this contention.

Defendants' argument is that the evidence that plaintiffs have regarding extending the pregnancy for more than forty-eight hours is inadmissible. We find this argument unconvincing. As set forth in a separate memorandum regarding the motions to strike expert witnesses, we have concluded that the evidence regarding extending the pregnancy beyond forty-eight hours is indeed admissible. For example, Dr. Albert George Thomas testified at his deposition that based upon Katrina Engles' presentation and pathologic findings, she is one of the patients who could have been extended beyond 48 hours had she been giving tocolytic therapy. (Doc. 139-5, Pl. Ex. C., 158-59).[2] Accordingly, this portion of the defendants' motion will be denied.

**2) Plaintiffs' claims for damages**

Next, defendants argue that they are entitled to summary judgment as to all of plaintiffs' claims for damages because the only evidence of damages is a comparison to a child born at term, and no evidence supports the contention that Plaintiff Brayden would have carried to term. We are unconvinced by defendants' argument.

Plaintiffs' expert Dr. Hermansen does *not* compare Brayden to an infant carried to term. Dr. Hermansen explained this point at his deposition.

> Q: . . . You compared him to just as he was born versus a term infant.
> A: Not exactly.
> Q: Okay. What am I missing?
> A: You're missing the difference between the

---

[2] Additionally, Dr. Harlan Giles opines that tocolytics is effective beyond two days. (Doc. 139-6, Giles Report at 6).

5

> words preterm and premature.
> Q: Okay.
> A: Preterm means carrying to 37, 38 weeks. That's not pre - - or less than 37 or 38 weeks. That's not the same as premature. Mature has to do with more your functioning than your age; and, if you are 30 weeks and get steroids in for a day or two, you significantly lessen or reduce or eliminate the prematurity, even though you're still preterm.
> And here I'm talking about reducing the risks associated with prematurity. That includes either by significantly extending the pregnancy to get it near term or term or given [sic] the steroids. They both reduce the risk of prematurity.

(143, Hermansen Deposition, at 64-65).

Accordingly, defendants' argument lacks merit, and the motion for summary judgment on this point will be denied.

**3) Wage Loss Claim**

The third argument raised by the defendants is that they are entitled to summary judgment on plaintiffs' wage loss claim. Defendants argue that no evidence has been presented that a jury could rely upon with regard to the degree, if any, of lost earning capacity that will occur as a result of defendants' alleged negligence.

Defendants here argue regarding the admissibility of an actuary, David L. Hopkins, with regard to wage loss. Defendants claim his testimony is inadmissible. We have addressed these arguments in a separate memorandum dealing with the motion to preclude expert reports. We concluded that Hopkins would not be precluded. Thus, this portion of the defendants' motion for summary judgment should be denied also.

**4) Future medical costs projections for group home and full time guardian**

The defendants also argue that plaintiff has provided no admissible opinion testimony with respect to future medical cost projections for

6

placement of Brayden in a group home setting or full-time live-in companion care.  Because plaintiffs have not presented any evidence as to whether such care will be needed, the defendants assert that they are entitled to summary judgment on this issue.  We disagree.

Plaintiffs' expert Dr. Rugino opined that "Impuslivity and poor judgment may reasonably result in the need for closely monitored supportive care on a day to day basis."  (Doc. 143-6, Pl. Ex. K, Rugino's Report, pg. 12).  Another of plaintiffs' experts, Dr. Kugler, indicated that "[w]hether [Plaintiff Brayden] will be able to achieve independent living will need to be borne out over time[.]" (Doc. 140-5, Pl.  Ex. M., Kugler's Report at 9).  According to Dr. Kugler, Plaintiff Brayden will also be impaired "in his educational, social, recreational and occupational potential[.]" Id. at 12).  He will be limited in his vocational options.  (Doc. 140-6, Pl. Ex. N., Kugler's Supplemental Report at 4).   The jury may examine this evidence and determine that placement in a group home or a live-in companion will be needed by Plaintiff Brayden.[3]  Plaintiffs have two experts, a life care planner, B.A. McGettigan, RN and an economic expert, David Hopkins, ASA, who can provide the jury with evidence of the cost of such placement of a live-in companion.  Accordingly, summary judgment on this issue is not appropriate.

### 5. Defendant Bambi Petrinic's motion for summary judgment

Defendant Bambi Petrinic has also filed a separate motion for partial summary judgment.  In her motion, she seeks summary judgment on the issue of punitive damages.  She contends that the undisputed facts

---

[3]We have concluded in a separate memorandum that is not appropriate to preclude evidence from Drs. Rubino and Kugler.

establish that she did not act outrageously, or with evil motive or reckless disregard for the safety of Katrina Engle and her child. After a careful review, we will deny the motion.

Under Pennsylvania law, a health care provider must be found to have acted wilfully or wantonly or with reckless disregard to the rights of the patient to be liable for punitive damages.

Specifically, the law provides:

> Punitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the health care provider's act, the nature and extent of the harm to the patient that the health care provider caused or intended to cause and the wealth of the health care provide.

40 Pa.C.S.A. § 1303.505.

The Pennsylvania Superior Court has explained reckless disregard as follows:

> [T]he actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Hall v. Jackson, 788 A.2d 390, 403 (Pa. Super. Ct. 2001)(citations omitted). "[I]t is well-established that the decision of whether to award punitive damages in the first place lies in the jury's determination of whether the defendant's conduct was outrageous." Vance v. 46 and 2, Inc., 920 A.2d 202, 206 (Pa. Super. Ct. 2007).

Defendant Petrinic argues that the facts of record, even when viewed in the light most favorable to the plaintiffs, establish at most ordinary

negligence, not wilful or wanton conduct or a reckless indifference to the rights of others.   Plaintiffs argue that their claim for punitive damages is based upon the totality of the acts that occurred from the time Plaintiff Katrina Engle was admitted to Guthrie to the time of her untimely and improper discharge.

Plaintiffs have evidence that Defendant Petrinic discharged Plaintiff Katrina Engle although she knew or should have known of her history of the following:

     1) Prior pre-term birth;

     2) Short time between pregnancies;

     3) A viral infection (HPV);

     4) Group B strep infection;

     5) An existing UTI;

     6) Low socio-economic status; and

     7) Active smoking during pregnancy.

Moreover, Petrinic should have known that Plaintiff Katrina was at high risk for a pre-term birth because of:

     1) Unresolved fetal tachycardia;

     2) Vaginal bleeding;

     3) Two-day history of abdominal cramping;

     4) Pressure with urination and

     5) Uterine irritability.

(See Doc. 139-3, Pl. Ex. A, Thomas Report).

Plaintiffs assert that because Defendant Petrinic knew or should have known all of these factors that her actions were in fact a wholesale abandonment of both Plaintiff Brayden and Katrina.  In fact, plaintiffs'

expert Albert G. Thomas, Jr., M.D. opined that Defendant Petrinic's conduct was "cavalier in the extreme" and "a flagrant disregard for the safety and well-being of this patient and her fetus." (Id. at 6, 9). Moreover, Thomas was "disturbed by Dr. Petrinic's dismissal of [a] significant objective clinical finding" and concluded that her excuse was "outrageous." (Id. at 9).

Based upon this evidence, it appears to the court that at this point judgment on the issue of punitive damages is inappropriate and the defendant's motion will be denied.

**Conclusion**

For the reasons set forth above, the defendants' motion for summary judgment will be denied in all respects. An appropriate order follows. Most of the issue raised by the defendants were addressed in our memorandum disposing of their motion to preclude expert witnesses. Generally, the parties argue over the validity of the expert's conclusions and the facts of the case. These matters are best left to the trial where counsel can address them through cross-examination and argument.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAYDEN HURD, A MINOR, by his parents and natural guardians, KATRINA ENGLE and BRYAN HURD, and KATRINA ENLGE and BRYAN HURD, in their own right,<br>　　　　　　　　Plaintiffs<br><br>　　　　　v.<br><br>THOMAS A. YAEGER, M.D.; BAMBI PETRINIC, M.D.; ROBERT PACKER HOSPITAL; GUTHRIE CLINIC SAYRE; GUTHRIE HEALTH CARE SYSTEM,<br>　　　　　　　　Defendants | No. 3:06cv1927<br><br>(Judge Munley) |

## ORDER

**AND NOW**, to wit, this 13th day of August 2008, the defendants' motion for summary judgment (Doc. 125) and Defendant Petrinic's motion for partial summary judgment (Doc. 119) are hereby **DENIED**.

　　　　　　　　　　　　**BY THE COURT:**

　　　　　　　　　　　　**s/ James M. Munley**
　　　　　　　　　　　　**JUDGE JAMES M. MUNLEY**
　　　　　　　　　　　　**United States District Court**